# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

DARREN L. OWENS,

    Plaintiff,

vs.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

No. 17-CV-00078-LRR

**REPORT AND RECOMMENDATION**

_____

Plaintiff, Darren L. Owens ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 and supplemental security income under Title XVI, 42 U.S.C. §§ 1381-83f. Claimant contends that the Administrative Law Judge (ALJ) who heard his claims erred in determining that claimant was not disabled.

For the reasons that follow, I recommend that the District Court **reverse and remand** this case for further proceedings and findings regarding whether claimant's residual functional capacity should include a limitation regarding a low-stress work environment and, if so, whether there remain jobs that exist in significant numbers in the national economy that claimant could perform.

## I.    BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 13). Claimant was forty-three years old when he allegedly became disabled. (AR 24).[1] He was fifty years old at the time of both the

---

[1] "AR" refers to the administrative record below.

first and second hearings on January 28, 2015, and December 9, 2015, respectively, and fifty-one years old at the time of the decision. (AR 9, 26). Claimant graduated from high school. (AR 24). Claimant previously worked in assembly for a manufacturing company from 1989 to 2005. (AR 469).

On May 23, 2013, claimant filed an application for disability insurance benefits and supplemental security income. (AR 9). He alleged a disability onset date of August 1, 2008, but later amended that date to April 23, 2010. (*Id.*). Claimant asserted he was disabled due to asthma, chronic obstructive pulmonary disease (COPD), bipolar disorder, morbid obesity, depression, sleep apnea, and diabetes. (AR 565). The Social Security Administration denied the claim initially and on reconsideration. (AR 9, 258-67, 274-82). On January 28, 2015, Administrative Law Judge ("ALJ") Tela L. Gatewood held a hearing on the matter. (AR 76-114). ALJ Robert J. Burbank was later assigned to the case and he held a second hearing on December 9, 2015. (AR 40-75). Claimant offered testimony and was represented by counsel in both hearings. (AR 9). Roger Marquardt, a vocational expert, also testified at the first hearing and Marilyn Schmitt, another vocational expert, testified at the second hearing. (AR 40, 76). On February 3, 2016, ALJ Burbank issued a decision finding claimant was not disabled. (AR 9-26). On May 24, 2017, the Appeals Council denied review. (AR 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On July 19, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). By February 13, 2018, the parties had filed their briefs. (Docs. 14, 19, & 20). On February 14, 2018, the Court deemed the case fully submitted and ready for decision. (Doc. 21). On that same date, the Honorable Linda R. Reade, United States District Judge, referred this case to me for a Report and Recommendation.

## II.   *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

2

period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-

3

workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other

4

work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since April 23, 2010. (AR 11-12).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "chronic obstructive pulmonary disease, obesity, affective disorders, personality disorder, hypertension, and sleep apnea." (AR 12). The ALJ further discussed claimant's other documented impairments and found those impairments did not meet the definition of "severe" impairments under Social Security Administration regulations. (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 12-14).

At Step Four, the ALJ found that claimant had the RFC to perform light work, "except he cannot climb ladders, ropes, or scaffolds[;] he needs to avoid concentrated exposure to extreme cold, extreme heat, and hazardous conditions; he need[s] to avoid even moderate exposure to fumes, noxious chemicals and other allergens." (AR 14). The ALJ also found claimant was "limited to jobs that involve understanding, remembering, and carrying out only simple instructions." (*Id.*). Also at Step Four, the ALJ found claimant was unable to perform any past relevant work. (AR 24).

5

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy claimant could still perform, including marker, photocopy machine operator, and ticket seller. (AR 24-25). Therefore, the ALJ concluded that claimant was not disabled. (AR 25-26).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health*

*& Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error in assessing claimant's RFC because (1) the ALJ failed to evaluate properly the work-related limitations from claimant's "treatment team," including psychiatrist Dr. Mark Mittauer, M.D. and therapist Tamara Taylor-Hillyer[2] (Doc. 14, at 3-15); and (2) the ALJ did not include in claimant's RFC a limitation that claimant could only work in a low-stress workplace. (Doc. 14, at 15-18).

### A. *Treatment Team's Opinions*

Claimant argues that the ALJ should have afforded the opinions of Dr. Mittauer and therapist Ms. Taylor-Hillyer controlling or substantial weight and, had the ALJ done so, claimant would have been found disabled. "'A treating physician's opinion is given

---

[2] In his decision, the ALJ misspelled Taylor-Hillyer's name as "Taylor-Hills."

controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (alteration in original) (internal quotation marks omitted) (quoting *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009)); 20 C.F.R. § 404.1527(d)(2). "Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 817-18 (8th Cir. 2007) (internal quotation marks omitted). A treating physician's opinion, however, "does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). "It may have 'limited weight if it provides conclusory statements only, or is inconsistent with the record.'" *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Samons*, 497 F.3d at 818). "The ALJ 'may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (omission in original) (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). Ultimately, an ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). *See also Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

    Claimant argues that Dr. Mittauer and Ms. Taylor-Hillyer, together, constituted a "treatment team" whose opinions were entitled to controlling or at least substantial weight. It should be noted that although Ms. Taylor-Hillyer is not an acceptable medical source, the ALJ nevertheless properly considered her opinions. SSR 06-3p. Dr. Mittauer and Ms. Taylor-Hillyer worked at the Abbe Center. They issued several medical source statements in September 2013, November 2013, August 2014, and November 2015 in which they opined that claimant needed unscheduled work breaks and was unable to

handle stress, maintain attention and concentration, and had difficulty relating to co-workers and others. (AR 991-96, 1028-29, 1114-15, 1460-65). The ALJ afforded Dr. Mittauer's and Ms. Taylor-Hillyer's opinions little weight because he found their opinions were not supported by their treatment records. (AR 21-22). I find that the ALJ gave good reasons for assessing the weight he afforded the opinions of Dr. Mittauer and Ms. Taylor-Hillyer (except as set forth in section V(B) of this Report and Recommendation).

The medical records from the Abbe Center show a course of treatment by Dr. Mittauer and Ms. Taylor-Hillyer from 2013 to 2015. (AR 972-85, 1011-20, 1149-76). During that time period, claimant was getting clean from the use of controlled substances, including crack cocaine, although he had occasional relapses in the use of illegal controlled substances. (AR 783-85, 919). Between 2013 and 2015, claimant experienced several situational stressors, including the death of friends and family members. (AR 1157, 1270, 1325, 1328, 1331, 1453). He was treated for depression, schizoaffective disorder, bipolar disorder, and anxiety disorder through various medications. (AR 981-83, 1027, 1114, 1150). Abbe Center records reflect that claimant was responsive to such treatments. (AR 1015, 1161, 1173). Moreover, throughout the relevant time period, claimant was found to have grossly intact orientation, memory, and concentration, a normal affect, and his thought processes were coherent and goal-oriented. (AR 981, 1136, 1139, 1159, 1166, 1173, 1220, 1322, 1326, 1328-29).[3]

I find there was substantial evidence in the record as a whole for the ALJ to discount the weight afforded to the opinions of Dr. Mittauer and social worker Ms. Taylor-Hillyer because the limitations reflected in their opinions were not supported by their own medical records. *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (holding that "[i]f a doctor's opinion is inconsistent with or contrary to the medical

---

[3] On one occasion, the records reflect that claimant's concentration was poor, but this was shortly after his sister had died and he had started drinking heavily. (AR 1325-26).

9

evidence as a whole, the ALJ can accord it less weight" (citation and internal quotation marks omitted). A physician's opinions are entitled to less weight, or no weight, when their treatment notes are inconsistent with their ultimate opinions. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (holding the ALJ properly discounted the weight given to a treating physician when the physician's opinion was inconsistent with the physician's own treatment notes); *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) ("A treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions."); *Garza v. Barnhart*, 397 F.3d 1087, 1088-89 (8th Cir. 2005) (holding that a physician's opinion is entitled to less weight when it is inconsistent with, *inter alia*, the physician's own findings). Further, if the opinion of the treating physician is inconsistent, or if other medical evaluations are "supported by better or more thorough medical evidence" the ALJ may be entitled to discount or even disregard a treating physician's opinion. *Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (citation and internal quotation marks omitted). In this case, the medical records do not reflect five episodes of decomposition, each lasting at least two weeks, as Ms. Taylor-Hillyer opined. (AR 22, 1466). Nor do the medical records reflect that claimant has a significant inability to concentrate that would impair his ability to work. Further, when, as here, a claimant's impairment is effectively treated by medication, the impairment does not constitute a disability. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007).

Moreover, the records reflect that to the degree claimant periodically experienced periods of more severe symptoms, those periods of exacerbation corresponded to times when his friends and family members died. Such situational stressors do not rise to the level of a mental impairment. *Robertson v. Astrue*, No. 12-3045-CV-S-ODS, 2013 WL 353088, at *4 (W.D. Mo. Jan. 29, 2013) ("Depression and anxiety brought about by temporary situational factors are not typically thought of as a valid basis for a disability claim." (citing *Gates v. Astrue*, 627 F.3d 1080, 1082-83 (8th Cir. 2010)); *see also Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014) (affirming denial of benefits

when relapse of mental health symptoms was shown to be caused by "situational stressors related to legal problems and family issues"); *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (noting that claimant's period of depression was situational as a result of the denial of food stamps and workers compensation).

Finally, the ALJ properly discounted the opinions of Dr. Mittauer and Ms. Taylor-Hillyer because the degree of limitations reflected in their opinions was inconsistent with claimant's daily activities. (AR 23-24). Claimant managed properties, which included mowing and snow removal, performed household chores, assisted in the care of his elderly parents, and engaged in infrequent social activities. (AR 24). Claimant also worked as a house painter after the alleged disability onset date, which he reported as a "good job," although it did not last or constitute full-time work. (AR 11-12, 24). These daily activities are inconsistent with the significant limitations reflected in the opinions of Dr. Mittauer and Ms. Taylor-Hillyer. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (affirming despite ALJ's rejection of medical opinion evidence of record where ALJ relied on treatment received and daily activities).

In short, I find substantial evidence in the record as a whole supports the ALJ's residual functional capacity assessment. I find the ALJ gave good reasons for affording little weight to the opinions of Dr. Mittauer and Ms. Taylor-Hillyer. Further, I find the ALJ reasonably accounted for claimant's mild to moderate mental impairments by finding claimant should be "limited to jobs that involve understanding, remembering, and carrying out only simple instructions." (AR 14). Although claimant has pointed to various references in the medical records showing occasions of mental impairments, there were other medical records showing responsiveness to treatment and that claimant's periods of more severe symptomology were situational. "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff*, 421 F.3d at 789). The Court may not reverse the ALJ's decision "simply because [the Court]

11

would have come to a different conclusion." *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citation omitted). In short, I find the ALJ properly acted within his zone of choice in determining claimant's residual functional capacity, except as set forth in the following section.

### B. Low Stress Work Environment

Claimant alleges that the ALJ's RFC assessment is erroneous because the ALJ did not give full consideration to claimant's ability to handle stress and, further, failed to make specific findings regarding claimant's ability to handle stress. (Doc. 14, at 15-18). Claimant argues that the evidence showed that he had difficulty handling stress. (*Id.*, at 17). Claimant relies on Dr. Mittauer, Ms. Taylor-Hillyer, and the state agency medical experts, who, according to claimant, all opined that claimant could perform only simple, repetitive tasks in low-stress settings. (Doc. 14, at 17-18). The Commissioner argues that the ALJ properly discounted the opinions of Dr. Mittauer and Ms. Taylor-Hillyer, that claimant's assertions that he could not handle stress arose only when the Commissioner denied claimant's prior disability applications, that the ALJ was not required to accept all of the state agency medical experts' opinions, and that claimant's stress was likely situational in nature. (Doc. 19, at 15-18). The Commissioner argues in the alternative that even if the ALJ erred in this regard, the error is harmless because claimant would still be able to perform the job of marker (AR 25), even if the ALJ had limited claimant to working in a low-stress environment. (Doc. 19, at 18-19).

An ALJ is required to consider how stress may affect a claimant's ability to work when there is evidence that a claimant's mental impairments may be affected by stress. *See, e.g.*, *Grissom v. Barnhart*, 416 F.3d 834, 837-38 (8th Cir. 2005) (finding the ALJ's decision was not supported by substantial evidence because the ALJ neither expressly accepted nor rejected medical opinions indicating claimant had poor abilities to adjust to work because of stress and other factors); *Martin v. Colvin*, No. 15 cv 2078 EJM, 2016 WL 1258857, at *3 (N.D. Iowa Mar. 28, 2016) ("An ALJ is required to consider how stress affects an individual's ability to work.").

Here, the ALJ, to a degree, addressed the issue of claimant's ability to handle stress. Regarding Ms. Taylor-Hillyer's opinion, the ALJ noted that Ms. Taylor-Hillyer opined that claimant "had great difficulty managing any level of stress, and could react aggressively, and had been violent on more than one occasion." (AR 22). Although the ALJ concluded that Ms. Taylor-Hillyer's opinion as to claimant's violent behavior was unsupported by the record, the ALJ did not explicitly explain any basis for rejecting this opinion. (*Id.*). Further, although the ALJ discounted Ms. Taylor-Hillyer's opinions based on Ms. Taylor-Hillyer's medical records that showed "that the claimant had only mild to moderate symptoms with a Global Assessment of Functioning score of 51-60, which is not consistent with [Ms. Taylor-Hillyer's] restrictions in the medical source statement," the ALJ failed to explain how these inconsistencies relate to Ms. Taylor-Hillyer's opinions regarding claimant's ability to handle stress. (*Id.*).

More troubling is the ALJ's misinterpretation of the opinions of the state agency psychological consultants, Jennifer Wigton, Ph.D.,[4] and Scott Shafer, Ph.D. The ALJ gave "great weight" to these sources. (*Id.*). The ALJ erroneously, however, concluded that Dr. Wigton found claimant "could handle stress." (*Id.*). That is not what Dr. Wigton found. Although Dr. Wigton noted claimant's assurance that claimant was "usually 'ok' at handling stress," Dr. Wigton opined that "[c]laimant has poor stress coping skills, but retains the ability to perform simple, repetitive tasks in low-stress settings, when motivated to do so." (AR 181, 196). Dr. Shafer shared this opinion. (AR 214, 231). I agree that an ALJ may generally afford great weight to a medical source without universally adopting that source's opinions. Here, however, the ALJ provided no explanation for why the ALJ rejected the opinions regarding claimant's need for a low-stress work environment. The ALJ's failure to explain such a rejection is in error.

---

[4] In his decision, the ALJ consistently misspelled Dr. Wigton's name as "Wignton."

I do not find this error to be harmless. In this case, neither vocational expert was questioned regarding whether sufficient jobs would exist in the economy were claimant's residual functional capacity to include a limitation for a low-stress work environment. (AR 72-74, 108-13). If, in fact, claimant can only work in a low-stress work environment, then that limitation should have been included in the hypothetical questions posed to the vocational expert. *See, e.g.*, *Howe v. Astrue*, 499 F.3d 835, 841–42 (8th Cir. 2007) (holding that a hypothetical question must include limitations found credible by the ALJ and supported by the medical record); *Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998) (same). Although it is possible the vocational experts would opine that sufficient jobs would still exist even with the addition of a low-stress work environment limitation, the Court has no way of knowing that because neither the ALJ nor claimant's attorney posed that hypothetical limitation to either vocational expert. (AR 72-74, 108-13).

The Commissioner argues that other courts have held that the job of marker, which the vocational expert testified claimant could perform based on the hypothetical questions posed, may be performed by an individual who is limited to working in a low-stress setting. (Doc. 19, at 19). Thus, the Commissioner argues, even if the limitation of a low-stress work environment had been added to the hypothetical questions posed, claimant still would have been able to perform the job of marker. Although other courts may have held that the job of marker is considered to exist in a low-stress environment, the Court is not presented with those other cases. The Court is presented with this claimant under these facts and this record. On this record, there is no way for this Court to conclude that the ALJ would have reached the same conclusion as to claimant's ability to work because the vocational experts were not questioned as to the availability of jobs for an individual with claimant's assessed limitations *and* the added limitation of having to work in a low-stress setting. For that reason, I find remand appropriate. *See, e.g.*, *Montgomery v. Shalala*, 30 F.3d 98, 100 (8th Cir.1994) (finding that failure of ALJ to accurately summarize the nature of claimant's alleged mental impairments in hypothetical

to vocational expert was not harmless error); *Prewitt v. Astrue*, No. 3:12–CV–00048–BD, 2013 WL 511029, at *3 (E.D. Ark. Feb. 12, 2013) (reversing and remanding when a limitation was not included in a hypothetical question posed to the vocational expert).

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **remand** this case for further proceedings, specifically for the ALJ to directly address the issue of whether claimant's residual functional capacity should include a limitation that he work only in a low-stress environment and whether, if that additional limitation is appropriate, there remain jobs that exist in significant numbers in the national economy that claimant can perform.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 13th day of April, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa